IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES WATT
doing business as
Silverhawk Records
doing business as
Bend of the River Publishing,

    Plaintiff,

      v.

DENNIS BUTLER
formerly known as
Mook B, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-3386-TWT

ORDER

This is an action for copyright infringement of a musical composition.  It is before the Court on the Defendants' Motion to Exclude Plaintiff's Expert Witness [Doc. 74] and the Defendants' Motion for Summary Judgment [Doc. 73].  For the reasons set forth below, the Court DENIES the Defendants' Motion to Exclude Plaintiff's Expert Witness and GRANTS the Defendants' Motion for Summary Judgment.

T:\ORDERS\08\Watt\msjtwt.wpd

## I. Background

This is a copyright infringement case arising from alleged infringement of the musical composition to the rap song "Come Up." The rap song was written in 1995 by Cedric Harris, Reginald Harris, and Robert Wiley, members of the rap group Woodlawn Click. The group composed "Come Up" at a studio in Chattanooga, Tennessee. The members of Woodlawn Click assigned their rights in "Come Up" to Plaintiff Charles Watt, a resident of Tennessee. Watt registered the copyright to "Come Up" in 2007.

In 2000, an abbreviated version of "Come Up" appeared in the film "Dirty South." "Come Up" was also included on the soundtrack to that film. "Dirty South" premiered in Atlanta to an audience of several hundred people. The film, however, was never released. Between 1996 and 2005, Watt, along with several other individuals, sold or gave away CDs featuring "Come Up" in Atlanta and elsewhere in the Southeast. Watt claims that he and his associates gave away between 12,000 and 15,000 CDs in the Atlanta area. The Defendants dispute the number of CDs that Watt and his colleagues distributed.

During this period, Woodlawn Click traveled to Atlanta to perform "Come Up" on multiple occasions, including at the Hosea Williams Feed the Hungry Benefit, Jack the Rapper Convention, Mechanicsville Festival, and the West End Festival. The

Plaintiff claims that Woodlawn Click publicly performed "Come Up" at least 50 times in Atlanta. In addition, Watt made a video featuring "Come Up" that appeared on the TV shows Comic Escape and Front Row Video. These TV shows aired in Atlanta.

Defendants Dennis Butler, Lafabian Williams, Adrian Parks, and Carlos Walker are members of the rap group D4L. The group wrote and performed the lyrics to the song "Betcha Can't Do It Like Me" ("Betcha"), along with Defendant Mark Robinson. Defendant Teriyakie Smith composed the music and beats to "Betcha" in 2004. "Betcha" was commercially released by Defendants Asylum, Atlanta Recording Corporation ("Asylum") and Warner-Elektra-Atlanta Corporation ("WEA") in 2005.

Upon hearing "Betcha" on the radio, Watt filed this action for copyright infringement under the Copyright Act and Copyright Revision Act, 17 U.S.C. §§ 101 *et seq*. Watt claims that "Betcha" copies a repeating 3-note motif, or *ostinato*, that serves as the underlying rhythmic track to "Come Up." Watt asserts that the Defendants heard "Come Up" through other artists in the Atlanta rap community or as a result of the distribution of "Come Up" by Watt and his associates.

In support of his claim, Watt offers the opinion of an expert witness, Dr. Gage Averill. Dr. Averill is an ethnomusicologist and is currently Vice-Principal Academic and Dean of the University of Toronto, Mississuaga, Ontario. Dr. Averill submitted

three reports: an initial report ("Initial Averill Rep.") submitted September 28, 2009 (See Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.), a supplemental report ("Supplemental Averill Rep.") submitted November 13, 2009 (See Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. B.), and a response to the Defendants' expert report ("Response Averill Rep.") submitted November 30, 2009 (See Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. C.).  In creating his reports, Dr. Averill listened to the recordings of "Come Up" and "Betcha," focusing on the allegedly infringing portions.  Dr. Averill then transcribed and analyzed relevant portions of the two songs using several different criteria.  Also, Dr. Averill used the computer program "Themefinder" to investigate the originality of the works in question.

Dr. Averill argues that "Come Up" and "Betcha" share an ostinato that is a substantial and memorable part of both songs.  Further, Dr. Averill concludes that "[o]ther than the lack of the transitional notes between the ostinati [in "Betcha"] . . . the pattern is **identical (100%)** to that in 'Come Up.'"  (Initial Averill Rep. at 5-6; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A (emphasis in original).)  Dr. Averill concludes that "[t]he distinctive pattern achieved in the ostinato, as well as its substantial similarity in use and genre, makes it overwhelmingly clear and convincing that imitation rather than 'parallel creation'

formed the genesis of the 'Betcha' ostinato." (Initial Averill Rep. at 7; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.)

In response, the Defendants claim that D4L and Teriyakie Smith independently created the musical composition for "Betcha." Smith states that he created the musical track for "Betcha" in 2004 by playing three adjacent keys on his keyboard. Smith and the members of D4L assert that before this lawsuit, they had not heard any version of "Come Up," nor had they seen the film "Dirty South." In support of their argument, the Defendants offer the opinion of an expert witness, Dr. Lawrence Ferrara. Dr. Ferrara asserts that "'Betcha' does not share any significant structural, harmonic, rhythmic, melodic or lyrical similarities, individually or in the aggregate, with 'Come Up' and 'Come Up, film version'." (Ferrara Aff. ¶ 11.) Dr. Ferrara concludes that "the use of this trite, fragmentary, and unoriginal 3-note pattern . . . is coincidental." Id. The Defendants have filed a Motion to Exclude Plaintiff's Expert Witness [Doc. 74] and a Motion for Summary Judgment [Doc. 73].

## II. Legal Standards

### A.    Daubert Standard

Federal Rule of Evidence 702 governs the admission of expert opinion testimony. Pursuant to that rule, before admitting expert testimony a court must consider: (1) whether the expert is qualified to competently testify regarding the

matters he intends to address; (2) whether the methodology used to reach his conclusions is sufficiently reliable; and (3) whether the testimony is relevant, in that it assists the jury to understand the evidence or determine a fact in issue. Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).  The party offering the expert's testimony has the burden to prove it is admissible by a preponderance of the evidence.  Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th  Cir. 1999).

    B.    Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III.  Discussion

A.    Defendants' Daubert Motion

The Defendants argue that Dr. Averill's testimony should be excluded because his methodology does not satisfy <u>Daubert's</u> reliability test.  <u>See Daubert</u>, 509 U.S. at 589 (methodology used by expert witness must be "sufficiently reliable").  As the Defendants point out, <u>Daubert</u> sets forth a list of non-exclusive factors to consider in making the reliability determination.  <u>Id.</u> at 593-94 (factors include whether expert's technique has been tested, whether theory has been subjected to peer review, potential rate of error, and general acceptance in scientific community).  However, "whether <u>Daubert's</u> specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 153 (1999).  In this case, the <u>Daubert</u> factors, designed to test scientific testimony, are not particularly helpful in making the reliability determination in the musical composition context.  Rather, the Court must ensure that Dr. Averill, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes [his practice] in the relevant field." <u>Id.</u> at 152.

Here, Dr. Averill's methodology is consistent with that used in his professional studies.  Dr. Averill listened to the recordings of "Come Up" and "Betcha." (Averill Decl. ¶ 25.)  Dr. Averill then transcribed and analyzed relevant portions of the two

songs using several different criteria.  Id.  Also, Dr. Averill used the computer program "Themefinder" to investigate the originality of the works in question. Id. ¶ 11.  Dr. Averill contends that his methodology is the same "whether in [a] litigation or non-litigation setting."  Id. ¶ 25. The Defendants have offered no evidence otherwise.  Rather, the Defendants argue that Dr. Averill's opinion focuses too heavily on the similarities between "Come Up" and "Betcha" while disregarding the differences in rhythm and context.  Further, the Defendants contend that Dr. Averill failed to consider evidence of independent creation and merely "regurgitated" information supplied by the Plaintiff's counsel.  (Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness at 17-22.)

These objections, however, go to the weight and accuracy of Dr. Averill's testimony, not the reliability of his methodology.  The Defendants make much of the fact that Dr. Averill does not properly consider the differences between "Betcha" and "Come Up."  This objection, however, goes to the significance that Dr. Averill attaches to those differences.  Clearly, the Defendants' expert, Dr. Ferrara, gives great weight to the dissimilarities between "Come Up" and "Betcha."  Indeed, he finds these dissimilarities fatal to the Plaintiff's case.  Dr. Averill disagrees, however, explaining that the differences between the two songs are merely "transitional sequences" having little bearing on the overall issue of copying.  (Initial Averill Rep. at 7; Defs.' Br. in

Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.)  Thus, the

Defendants' evidence shows that Dr. Averill's reasoning, and ultimately his

conclusions, are faulty.  The Defendants will be able to present this evidence at a trial,

if there is one.  The Defendants have offered no evidence, however, showing that Dr.

Averill's methods are unreliable.

The Defendants also argue that Dr. Averill is unqualified to offer expert

testimony in this case.  Dr. Averill is an ethnomusicologist who currently holds a

position as Vice-Principal Academic and Dean at the University of Toronto and a

faculty position of Full Professor at the University of Toronto Faculty of Music.  He

has previously served as an expert witness in musicology and copyright infringement

cases.  Like musicologists, ethnomusicologists are trained in musical analysis and

transcription.  As an ethnomusicologist, however, Dr. Averill's expertise also includes

contemporary rap music like "Come Up" and "Betcha."  Thus, Dr. Averill has the

requisite "knowledge, skill, experience, training or education" to serve as an expert

in this case.  See Fed. R. Evid. 702.  Because Dr. Averill is sufficiently qualified, and

his methodology is sufficiently reliable, his testimony should not be excluded.

B.     Defendants' Motion for Summary Judgment

The Defendants move for summary judgment as to the Plaintiff's copyright

infringement claim.  To establish a claim for copyright infringement, the plaintiff must

show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361(1991). If the plaintiff does not have direct evidence of copying, the plaintiff may still prevail by showing that the defendant had access to the song and that songs are "substantially similar." Benson v. Coca-Cola Co., 795 F.2d 973, 974 (11th Cir. 1986). Even without proving access, the plaintiff may still prevail by showing that the two works are "strikingly similar." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1248 (11th Cir. 1999) (citing Ferguson v. National Broadcasting Co., 584 F.2d 111, 113 (5th Cir. 1978)). Proof of independent creation, however, fully negates a claim of infringement unless the plaintiff can show actual copying. Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1233 (11th Cir. 2002). The Defendants concede that Watt owns the copyright to "Come Up." The Defendants contend, however, that there is no issue of material fact as to access, substantial similarity, independent creation, or striking similarity. The Court will address each of these contentions in turn.

      1.    Access

The Defendants contend that they did not have access to "Come Up" before creating "Betcha." In the Eleventh Circuit, access is defined as the "reasonable opportunity to view." Id. at 1249 (quoting Ferguson, 584 F.2d at 113). In Ferguson, the plaintiff sent copies of her unpublished musical composition to four individuals

and two companies.  All the copies were returned to her, although the defendant admitted having some contact with one of the recipients.  Id.  Still, the court found that the plaintiff did not have access to the composition.  Id.  Similarly, in Herzog, the plaintiff delivered her screenplay to members of her thesis committee.  Herzog, 193 F.3d at 1249.  The plaintiff noted that the defendant was an acquaintance of one of the committee members and suggested that the defendant might have acquired the screenplay from that individual.  Id.  The court held that the defendant did not have access to the plaintiff's work, noting that any finding to the contrary would be based on "impermissible speculation and conjecture."  Id. at 1256.  See also Benson, 795 F.2d at 975 (finding no access where plaintiff performed song sporadically in various locations throughout U.S. with no evidence that defendant attended any of those performances); but see ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 998 (2d Cir. 1983) (finding access where infringed song reached number one on music charts and was disseminated widely).

Here, there is an issue of material fact as to the Defendants' access to "Come Up."  Watt alleges that he and his colleagues distributed 10,000 to 15,000 copies of "Come Up" in the Southeast, including the Atlanta area.  Woodlawn Click performed "Come Up" at least 50 times at venues in Atlanta.  (Watt Decl. ¶ 5.)  "Come Up" was featured in Atlanta on "Front Row Video" and "Comic Escape."  Further, a short

version of "Come Up" was featured in the film "Dirty South" that premiered to an audience of several hundred.  "Come Up" was also featured on the soundtrack to that film. Importantly, Teriyakie Smith and the members of D4L live in the Atlanta area, where "Come Up" was disseminated and performed.   Further, several of the Defendants admit that they have performed at, visited, or are familiar with the venues where Woodlawn Click allegedly performed "Come Up."  (Defs.' Response to Pl.'s Statement of Additional Material Facts in Opp'n to Defs.' Mot. for Summ. J., at 22-23.)  Although Watt offers no proof that the Defendants ever heard "Come Up," this evidence is sufficient to establish that the Defendants had a "reasonable opportunity to view" the Plaintiff's work.  For this reason, there is  an issue of material fact as to the Defendants' access to "Come Up."

      2.   <u>Substantial Similarity</u>

Even assuming the Defendants had access to "Come Up," Watt must also show that "Come Up" and "Betcha" are substantially similar.  Substantial similarity "exists where 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" <u>Original Appalachian Artworks, Inc. v. Toy Loft</u>, 684 F.2d 821, 829 (11th Cir. 1982) (<u>quoting</u> <u>Durham Industries, Inc. v. Tomy Corp.</u>, 630 F.2d 905, 911 (2d Cir. 1980)).  To establish substantial similarity, the plaintiff must satisfy an extrinsic as well as an intrinsic test.  <u>Herzog</u>, 193 F.3d at

1257.  Under the extrinsic test, a court "inquires whether, as an objective matter, the works are substantially similar in protected expression."  Id.  Expert testimony is appropriate to aid in this inquiry.  Id.  Under the intrinsic test, the court determines whether a reasonable jury would find that the works are substantially similar.   "A court may grant summary judgment for defendant as a matter of law if the similarity between the two works concerns only noncopyrightable elements of the plaintiff's work *or* if no reasonable jury would find that the two works are substantially similar."  Herzog, 193 F.3d at 1257.

Here, the Defendants do not contend that the ostinato from "Come Up" is not copyrightable.  The Defendants do argue, however, that "Come Up" is not objectively or subjectively similar to "Betcha."   The Plaintiff offers the opinion of Dr. Gage Averill to establish extrinsic similarity.   Dr. Averill claims that "Come Up" and "Betcha" share an identical ostinato that runs virtually throughout both works.  (Initial Averill Rep.  at 7; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.)  Averill explains:

> The ostinato in "Betcha" begins at the start of the recording.  It consists of the same two motives of three notes each (3,2,1 in a minor scale) positioned in the same way rhythmically against the measure . . . Other than the lack of the transitional notes between the ostinati . . . the pattern is identical (100%) to that in "Come Up".

Id. at 5-6.  The Defendants' expert, Dr. Ferrara, challenges this evaluation, finding that the similarities between "Come Up" and "Betcha" are unimportant,  "trite," and "fragmentary."  (Ferrara Aff. ¶ 11.)  The finder of fact, however, and not the Court, must resolve this battle of the experts.

Further, the Court has reviewed audio recordings of "Come Up" and "Betcha." The recordings are by no means identical and reasonable jurors could certainly conclude that one was not copied from the other.  Still, it is possible to identify a similar repeating pattern underlying both works.  Thus, the Court cannot conclude that *no reasonable juror* would find that the two works are substantially similar.  For these reasons, there is a question of fact as to the substantial similarity of "Come Up" and "Betcha."

        3.    <u>Independent Creation</u>

The Defendants claim that "Betcha" was independently created by D4L and Teriyakie Smith.  Even where the plaintiff proves access and substantial similarity, "[t]hese elements only raise a presumption of infringement which may be rebutted by proof of [the defendant's] independent creation of the allegedly infringing song." <u>Benson</u>, 795 F.2d at 974.  In <u>Benson</u>, the plaintiff claimed the defendants copied portions of the plaintiff's song. <u>Id.</u>  In response, defendants presented uncontroverted testimony that they had independently created the song; describing several days spent

discussing and exchanging ideas.  Id. at 975.  The court found that this evidence of independent creation negated the plaintiff's infringement claim.  Id.

Similarly, in Calhoun, the plaintiff composer alleged that the defendant copied a melody from plaintiff's song.  The plaintiff's song was published and had been performed in churches and played on radio.  Calhoun, 298 F.3d at 1234. The plaintiff argued that the defendant had heard his song on the radio, television, or at a performance.  Id. at 1234.  Further, the court noted that the two works were not just similar, but "practically identical." Id. at 1232.  The defendant songwriter, however, offered evidence that "he 'independently created [the song at issue] during [a] church service in May or June 1976.'"  Id. at 1233.  The district court granted summary judgment for defendant and the Eleventh Circuit affirmed.  Id. at 1235.  The court reasoned that the plaintiff had offered no evidence to contradict the defendant's testimony of independent creation.  Id. at 1233.

The facts in this case are almost identical to Calhoun.  Here, the Defendants have offered evidence of independent creation.  Teriyakie Smith testified that he created the 3-note pattern at issue by using a computer keyboard and the "Fruity Loops" music production software.  (Smith Dep. at 14, 38.)  Smith explained that "the keys on the [computer] keyboard were right beside each other.  And that's how the tune came about."  Id. at 38.  Watt has offered no evidence to contradict Smith's

testimony.  Although, as in <u>Calhoun</u>, Watt argues that the Defendants may have heard a performance of "Come Up" or acquired a CD featuring the song, there is no evidence disputing Smith's detailed description of independent creation.  For this reason, despite evidence of access and substantial similarity, the Defendants have shown that "Betcha" was independently created.

    4. <u>Striking Similarity</u>

  Even where a plaintiff cannot demonstrate access, "he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar." <u>Corwin v. Walt Disney</u>, 475 F.3d 1239, 1253 (11th Cir. 2007) (quoting <u>Calhoun</u>, 298 F.3d at 1232 n.6).  Striking similarity exists where "the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'" <u>Id.</u> (quoting <u>Selle v. Gibb</u>, 741 F.2d 896, 901 (7th Cir. 1984)).  To preclude the possibility of independent creation, the plaintiff must present evidence that the similarities between the two works are particularly unique or complex.  <u>Selle</u>, 741 F.2d at 904.  This requirement is "particularly important with respect to popular music, 'in which all songs are relatively short and tend to build on or repeat a basic theme.'" <u>Benson</u>, 795 F.2d at 975 n.2 (quoting <u>Selle</u>, 741 F.2d at 905).

Here, Watt's evidence of striking similarity does not overcome the Defendants' showing of independent creation.  In his Supplemental Report, the Plaintiff's expert, Dr. Averill, opines that the "[t]he portions of 'Betcha' that have been taken from 'Come Up' are strikingly similar."  (Supplemental Averill Rep. at 3; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. B.)[1]  Dr. Averill identifies "an underlying ostinato pattern which, when the transitional sequences are set aside, constitutes a 100% match in the two recordings."  (Initial Averill Rep. at 7; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.) Further, Dr. Averill asserts that the "substantial similarity in use and genre, makes it overwhelmingly clear and convincing that imitation rather than 'parallel creation' formed the genesis of the 'Betcha' ostinato."  (Initial Averill Rep. at 7; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.)

Dr. Averill's use of the term "striking similarity," however,  is not sufficient to overcome the Defendants' evidence of independent creation.  First, Dr. Averill's conclusion that the ostinati in the two works are identical does not compel a finding

---

[1]The Defendants point out that Dr. Averill does not use the words "strikingly similar" in his Initial Report.  In his Supplemental Report, however, Dr. Averill concludes for the first time that "Betcha" and "Come Up" are strikingly similar.  In his Personal Declaration, Dr. Averill uses the phrase "strikingly similar" several times. (Averill Decl. ¶¶ 15, 16, 27.)  The absence of "strikingly similar" language in Dr. Averill's Initial Report, combined with the prevalence of this language in his later report and declaration is odd to say the least.

of striking similarity.  In <u>Calhoun</u>, the court noted that "even a casual comparison of the two compositions compels the conclusion that the two compositions are practically identical."  <u>Calhoun</u>, 298 F.3d at 1232.  The court reasoned, however, that "[g]iven the limited number of musical notes (as opposed to words in a language), the combination of those notes and their phrasing, it is not surprising that a simple composition of a short length might well be susceptible to original creation by more than one composer."  <u>Id.</u>  Indeed, the Eleventh Circuit has cautioned that "in the realm of copyright, identical expression does not necessarily constitute infringement."  <u>Id.</u>  Here, the Court has reviewed the recordings of both works.  Unlike the songs in <u>Calhoun</u>, "Come Up" and "Betcha" are not identical, to say the least.  Indeed, the Plaintiff's expert does not contend that the ostinati are identical, conceding that certain "transitional sequences" distinguish the two works.  (Initial Averill Rep. at  7; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex. A.)  These transitional sequences account for 33% of the total notes in the ostinato.  Such significant dissimilarities between the ostinati in "Come Up" and "Betcha," as compared to the identical melodies in <u>Calhoun</u>, weigh heavily against a finding of striking similarity.

Dr. Averill further supports his finding of striking similarity by arguing that the ostinati in "Betcha" and "Come Up" are similar in use and genre. (Initial Averill Rep.

at 7; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s Proposed Expert Witness, Ex.

A.)   This observation, however, does not create an issue of fact as to striking

similarity.  If anything, the fact that "Betcha" and "Come Up" are both rap songs

requires that the Plaintiff offer more evidence of striking similarity.  See Selle, 741

F.2d at 905 ("in a field such as that of popular music in which all songs are relatively

short and tend to build on or repeat a basic theme," testimony of complexity or

uniqueness "would seem to be particularly necessary.")  Similarly, in Calhoun, the

composition in question served as a chorus in two Christian songs.  Calhoun, 298 F.3d

at 1230.  Despite the similarities in both use and genre, the court declined to find

infringement in the face of evidence of independent creation.  Id. at 1234-35.  Here,

the fact that a repeating 3-note pattern serves as the track for two rap songs does not

practically  preclude the possibility that this pattern was independently created.

Finally, the Plaintiff has not presented sufficient evidence of complexity or

uniqueness.  This evidence is especially important where the number of copied notes

is so small. See Selle, 741 F.2d at 905 (testimony of complexity particularly necessary

where "songs are relatively short and tend to build on or repeat a basic theme.").

Here, Watt claims that the Defendants copied a repeating 3-note motif.  Despite its

brevity, Dr. Averill opines that though "the number of pitches used (three) might seem

to be few, this is no impediment to the ostinato's identity as a distinctive and original

contribution." (Initial Averill Rep. at 4; Defs.' Br. in Supp. of Defs.' Mot. to Exclude
Pl.'s Proposed Expert Witness, Ex. A.)  Dr. Averill notes that the opening motive to
Beethoven's Fifth Symphony, one of the most recognizable in all music, contains only
four notes.  Although Beethoven's Fifth Symphony is certainly recognizable, Dr.
Averill's report does not explain  how the 3-note ostinato at issue *here* is so complex
or unique that the Plaintiff's evidence of independent creation is implausible.  Rather,
in his Supplemental Report, Dr. Averill simply concludes that the similar portions of
"Betcha" and "Come Up" are strikingly similar and that "the defense of 'coincidence'
concerning the composition of the two works is absolutely implausible."
(Supplemental Averill Rep. at 3; Defs.' Br. in Supp. of Defs.' Mot. to Exclude Pl.'s
Proposed Expert Witness, Ex. B.)

Dr. Averill's conclusion, however, is not sufficient to rebut the Defendants'
evidence of independent creation.  "[A]n issue of fact cannot be created by merely
reciting the magic words 'strikingly similar' and 'no possibility of independent
creation.'" McRae v. Smith, 968 F. Supp. 559, 567 (D. Colo. 1997); see also Selle,
741 F.2d at 905 ("[W]e do not think the affidavit of [the expert witness], stating in
conclusory terms that it is extremely unlikely that one set [of architectural plans] could
have been prepared without access to the other set, can fill the gap which is created
by the absence of any direct evidence of access.") (internal quotations omitted).  Here,

in light of the evidence of independent creation offered by the Defendants, the similarities noted by Dr. Averill do not "preclude any explanation other than that of copying." Selle, 741 F.2d at 905. For these reasons, there is no issue of material fact as to the question of striking similarity.

IV.  <u>Conclusion</u>

For the reasons set forth above, the Court DENIES the Defendants' Motion to Exclude Plaintiff's Expert Witness [Doc. 74]; and GRANTS the Defendants' Motion for Summary Judgment [Doc. 73].

SO ORDERED, this 27 day of September, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge